**FILED**

**AUG 3 1 2010**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MENLO WORLDWIDE GOVERNMENT<br>SERVICES, LLC<br>2855 Campus Drive<br>San Mateo, CA 94403-2510<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE<br>1000 Defense Pentagon<br>Washington, DC 20301-1000<br><br>and<br><br>UNITED STATES TRANSPORTATION<br>COMMAND<br>508 Scott Drive<br>Scott Air Force Base, IL 62225-5357<br><br>Defendants. | Case: 1:10-cv-01482<br>Assigned To : Kennedy, Henry H.<br>Assign. Date : 8/31/2010<br>Description: FOIA/Privacy Act |

## COMPLAINT FOR PERMANENT INJUNCTION
## AND DECLARATORY JUDGMENT ("REVERSE-FOIA")

Plaintiff Menlo Worldwide Government Services, LLC ("Menlo") states the following for its complaint against Defendants United States Department of Defense ("DOD") and United States Transportation Command ("USTRANSCOM"):

### NATURE OF THE ACTION

1. This is a "Reverse FOIA" action arising from the recent decision of Defendant United States Transportation Command, which is a subagency or component of the United States Department of Defense, to release confidential commercial and financial information obtained from Plaintiff Menlo Worldwide Government Services, LLC. Menlo requests the Court to

declare that the information is exempt from disclosure under the Freedom of Information Act and prohibited from disclosure by the Trade Secrets Act. Menlo further requests the Court to enjoin USTRANSCOM and DOD from releasing the information in the future. Menlo is not seeking a preliminary injunction at this time because USTRANSCOM represented that it will not release the information until a Court ruling resolves the issue.

## PARTIES

2. Plaintiff Menlo Worldwide Government Services, LLC ("Menlo") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in San Mateo, California.

3. Defendant United States Department of Defense ("DOD") is a Department of the Executive Branch of the United States Government. DOD is responsible for and controls USTRANSCOM.

4. Defendant United States Transportation Command ("USTRANSCOM") is an agency of the Executive Branch of the United States. USTRANSCOM is a subagency or component of DOD with its headquarters at Scott Air Force Base, Illinois. USTRANSCOM received the FOIA request at issue in this litigation and announced its decision to release information responsive to the FOIA request by letter dated August 23, 2010.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Freedom of Information Act, 5 U.S.C. § 552, the Trade Secrets Act, 18 U.S.C. § 1905, the Administrative Procedure Act, 5 U.S.C. § 551-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## FACTS

7. Menlo is the prime contractor for USTRANSCOM's Defense Transportation Coordination Initiative ("DTCI"). DTCI is a strategic logistics program designed to improve the reliability, predictability, and efficiency of DOD freight transportation in the continental United States through the increased use of dedicated truck schedules, cross-docking operations, better mode selection, and load optimization. It is intended to allow DOD to leverage Menlo's existing commercial freight volume, to utilize commercial best practices to achieve efficiencies in distribution, and to realize associated cost savings.

8. Following a competitive procurement process involving Menlo and other logistics management companies, USTRANSCOM awarded the DTCI Contract to Menlo in August 2007. The DTCI Contract has a three-year base period worth approximately $525 million. The DTCI Contract has two one-year option periods valued at approximately $543 million and two one-year option periods worth approximately $567 million.

## THE PMRs

9. By letter dated August 10, 2009, USTRANSCOM advised Menlo that it had received a FOIA request from the Law Office of Timothy C. Riley seeking Program Management Reviews ("PMRs") submitted by Menlo for the months of May, August, September, and November 2008, and January and February of 2009.

10. USTRANSCOM's August 10, 2009 letter invited Menlo to provide justification that would support withholding the PMRs in question from public release.

11. Menlo responded to USTRANSCOM's August 10, 2009 letter on September 4, 2009. Among other things, Menlo's September 4, 2009 letter explained that the PMRs responsive to Mr. Riley's FOIA request contain "detailed information about the innovations,

strategies, and know-how that Menlo brings to bear in order achieve the cost savings desired by the Government. The PMRs review Menlo's performance strategies, its costs, the savings produced, the effectiveness of Menlo's strategies, service and delivery improvements produced by these innovations, focus areas for improvement, and detailed information about Menlo's proprietary operations. Each PMR is a detailed presentation of Menlo's costs and implementation strategies involving its commercial operations and operations specific to the DTCI contract for the reporting period it covers."

12. Menlo's September 4, 2009 letter also identified three reasons that the PMRs were exempt from public disclosure under FOIA Exemption 4 and the Trade Secrets Act.

13. The September 4, 2009 letter explains that the PMRs are exempt from public disclosure under the voluntary submission standard set forth in *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc). It points out that there are no requirements for the form, structure, or content of the PMRs, and that neither the PMRs themselves nor the detailed cost and performance information reflected in them are customarily released to the public.

14. The September 4, 2009 letter also addresses the propriety of releasing the PMRs under the more restrictive Exemption 4 test applicable to "mandatory" submissions. It asserts that releasing the PMRs would impair the government's ability to obtain necessary information in the future. Without an appropriate guarantee of confidentiality, the letter explains that Menlo and other similarly situated contractors would refuse to provide data reflecting their costs and performance efficacy, much less in the proprietary formats intended to make the information most usable.

15. Finally, the September 4, 2009 letter identifies the substantial competitive harm that arise from releasing the PMRs. Specifically, the PMRs contain information that would be useful to competitors seeking to influence USTRANSCOM's decision to exercise options available under the DTCI contract. Among other things, a competitor "could mimic Menlo's proprietary method of analyzing and presenting strategic information, and the information itself, which could decrease the possibility that the Government would exercise the DTCI contract option."

## COST SAVINGS DATA

16. By letter dated August 12, 2009, USTRANSCOM advised Menlo that it had received a FOIA request from the Law Office of Timothy C. Riley seeking "Historical Baseline Cost Data" and "Cost Savings Data" submitted by Menlo.

17. Menlo responded to USTRANSCOM's August 12, 2009 letter on September 11, 2009. Among other things, Menlo's September 11, 2009 letter explained that the Cost Savings Data responsive to Mr. Riley's FOIA request contain "detailed information that would provide a competitor with insight into Menlo's costs and the results produced by Menlo's innovations, methods and freight consolidation strategies. It includes contractor scorecards and accessorial reports broken down by pick-up and delivery points, dollar amounts of savings on a monthly basis, detailed carrier on-time performance data, detailed delivery reports, loss and damage reports, exception codes, freight costs, premium freight costs, and other detail cost and saving information."

18. Menlo's September 11, 2009 letter states three reasons that the Costs Savings Data are exempt from public disclosure under FOIA Exemption 4 and the Trade Secrets Act.

19. The September 11, 2009 letter explains that the reports containing the Cost Savings Data are exempt from public disclosure under the voluntary submission standard set forth in *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc). There are no contractual requirements specifying the method or form by which the Cost Savings Data is presented. The Cost Savings Data reports prepared by Menlo and submitted to USTRANSCOM are not customarily released to the public.

20. The September 11, 2009 letter also addresses the propriety of releasing the Cost Savings Data under the more restrictive Exemption 4 analysis applicable to "mandatory" submissions. It asserts that releasing Menlo's Cost Savings Data would impair the government's ability to obtain necessary information in the future. Without an appropriate guarantee of confidentiality, the letter explains that Menlo and other similarly situated contractors would decline to utilize their proprietary methods of analyzing and presenting information, which is one essential purpose of the DTCI contract.

21. Finally, the September 11, 2009 letter shows how releasing the Cost Savings Data would cause substantial competitive harm to Menlo. The Cost Savings Data would be useful to competitors seeking to influence USTRANSCOM's decision to exercise options available under the DTCI contract. A competitor "could not only copy Menlo's proprietary method of analyzing and presenting such information, but it could underbid Menlo . . . . This could decrease the possibility that the Government would exercise the DTCI Contract option."

## USTRANSCOM RELEASE DECISION

22.     On August 23, 2010, USTRANSCOM notified Menlo that it "disagreed" with the assertions set forth in Menlo's letters of September 4, 2009, and September 11, 2009, and that it intended to release the PMRs and the Cost Savings Data submitted by Menlo in connection with the performance of the DTCI Contract. USTRANSCOM's letter advised Menlo that it would wait five federal business days from Menlo's receipt of the letter before releasing the information in order to provide Menlo with "an opportunity to take appropriate measures to take legal action before a release is made."

23.     By letter from its counsel dated August 30, 2010, Menlo advised USTRANSCOM that it intended to file an action seeking to enjoin the release of the PMRs and the Cost Savings Data by August 31, 2010.

24.     By telephone on August 31, 2010, USTRANSCOM advised Menlo's counsel that it would not release information addressed in Menlo's letters of September 4, 2009 and September 11, 2009, pending the outcome of this action.

25.     Menlo does not object to USTRANSCOM's release of the Government's "Historical Baseline Cost Data" in the same format in which it was provided to Menlo in connection with the performance of the DTCI Contract. For the reasons stated above, Menlo objects to the release of any Menlo submission that contains, analyzes, or applies the Historical Baseline Cost Data.

## COUNT I - ADMINISTRATIVE PROCEDURE ACT

26.     Menlo realleges and incorporates by reference each allegation set forth in paragraphs 1 through 25 of this Complaint.

27. USTRANSCOM'S decision to release the PMRs and the Cost Savings Data is a final agency action in accordance with 5 U.S.C. § 704.

28. The PMRs and the Cost Savings Data fall within the scope of Exemption 4 of the Freedom of Information Act. 5 U.S.C. § 552(b)(4).

29. Public disclosure of the PMRs and the Cost Savings Data would violate the Trade Secrets Act. 18 U.S.C. § 1905.

30. USTRANSCOM's decision to release the PMRs and the Cost Savings Data is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

31. Public disclosure of the PMRs and the Cost Savings Data will cause irreparable harm to Menlo by allowing Menlo's competitors to see and utilize Menlo's proprietary methods for analyzing, organizing, and presenting detailed cost and performance data developed in the course of Menlo's performance of the DTCI Contract. Such disclosure would enable Menlo's competitors to undercut Menlo's pricing model, to improve their ability to influence USTRANSCOM's decision to exercise options under the DTCI contract, and to improve their ability to compete with Menlo in other future government and commercial contracts.

32. Menlo will have no adequate remedy at law if USTRANSCOM publicly discloses the PMRs and Cost Savings Data.

33. The benefits of granting an injunction outweigh the harm that other parties will suffer if the injunction is not granted.

34. Injunctive relief will serve the public interest in protecting confidential business information from inappropriate government disclosure.

WHEREFORE, Menlo respectfully requests that the Court enter an order:

A. Declaring that the PMRs and the Cost Savings Data submitted by Menlo in the performance of the DTCI Contract fall within the scope of FOIA Exemption 4 and the Trade Secrets Act;

B. Declaring that the decision to release the PMRs and Cost Savings Data is arbitrary, capricious, or otherwise contrary to law in violation of the Administrative Procedure Act;

C. Permanently enjoining USTRANSCOM and DOD from releasing the PMRs and Cost Savings Data; and

D. Granting such other and further relief as the Court may deem just and proper.

DATED this 31st day of August 2010.

Respectfully Submitted,

/s/ Brian Waagner

Brian P. Waagner (DC Bar No. 450823)
David P. Hendel (DC Bar No. 370705)
Husch Blackwell
750 17th Street, NW, Suite 1000
Washington, DC 22182
Phone: (202) 378-2300
brian.waagner@huschblackwell.com
david.hendel@huschblackwell.com